Amy **SHIELDS,** Appellant,

v.

**ELI LILLY AND COMPANY,** Appellee.

No. 89–7015.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 5, 1990.

Decided Feb. 16, 1990.

Aaron M. Levine, with whom Brandon J. Levine and Sybil Shainwald were on the brief, for appellant.

Gail L. Heriot, with whom James A. Hourihan, Marshall Simonds, and Loretta M. Smith were on the brief, for appellee.

Before: MIKVA and RUTH B. GINSBURG, Circuit Judges, and ROBINSON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

Appellant, Amy Shields, challenges a district court decision granting summary judgment for appellee, Eli Lilly and Company ("Lilly"). Shields filed a tort claim against Lilly alleging that she contracted cancer as a result of having been exposed *in utero* to Lilly's product, diethylstilbestrol ("DES"). The trial court granted Lilly's motion for summary judgment on the ground that Shields had presented no conclusive proof that she had been exposed to DES. We have reviewed the district court's determination *de novo*, and because we do not find it to be consistent with controlling precedent or the facts presented, we reverse.

### BACKGROUND

Amy Shields filed suit in federal district court against Eli Lilly and Company, alleging that she developed clear-cell vaginal cancer as a result of being exposed to DES while she was a fetus. DES is a medication that was manufactured by Lilly for pregnant women to reduce the risk of miscarriage. The FDA banned DES in the 1970s after overwhelming evidence linked its use to the development of clear-cell vaginal cancer in women whose mothers received the drug during pregnancy. *See Eli Lilly & Co. v. Home Insurance Co.,* 764 F.2d 876 (D.C.Cir.1985).

Following discovery, Lilly filed a motion for summary judgment arguing that plaintiff could not prove that she had been exposed to DES. In response, appellant acknowledged that she did not have any direct evidence of exposure to DES. Her mother received medication during the course of her pregnancy but was never told its name. The doctor who prescribed this medication is deceased, and both his prescription records and those of the pharmacy that dispensed the medication have been lost. Nevertheless, appellant proposed to identify the medication as DES, based upon her mother's physical description of the medication, the circumstances under which it was prescribed, and the professional practice of the doctor who prescribed the medication.

In the summary judgment proceeding, appellant introduced medical records which showed that her mother, Mrs. Shields, experienced a type of bleeding ("staining") while pregnant with appellant; this condi-

tion is typically associated with miscarriages. Mrs. Shields testified that when bedrest did not stop the staining, her physician, Dr. Sinclair, prescribed medication for her. Although Mrs. Shields could not identify the drug by name, she recalled that it came in a small, red pill.

Dr. Sinclair's nurse, Mrs. Clifford, testified that the doctor sometimes prescribed medication in pill form for patients who were staining or in danger of aborting, and that when he did so, his practice was to prescribe either DES or progesterone. Appellant presented the affidavit of Dr. Linwood Tice, an expert in pharmaceutical history, who stated that although DES came in the form of small red pills, no progesterone commonly and ordinarily on the market in the 1950s met this description.

Finally, appellant introduced the records of several doctors who had examined her. The first examination took place nine years before appellant was ever diagnosed as having cancer. The attending physician, Dr. Isvan Nyrjesy, detected some irregularities in her uterus and on this basis concluded that she had probably been exposed to DES. The following year, appellant was examined by another doctor, Dr. Donald Meek, who also concluded that she had probably been exposed to DES. In 1986, Shields was diagnosed as having "clear cell carcinoma of the vagina," which her doctor observed was accompanied by "typical DES-associated changes." Appellant's tissue samples were submitted to Dr. John Shane, who stated in his affidavit that "such lesions do not occur in the absence of DES exposure ... and do not appear in the absence of DES exposure to a statistical certainty of 97% to 99.7%."

After considering this evidence, the trial court concluded that appellant had not carried her burden of showing sufficient evidence to prove exposure at trial. Accordingly, it granted the summary judgment motion. Appellant challenges this conclusion on the grounds that the trial court imposed an unduly high standard of proof and that, applying the appropriate standard, her offer of proof was sufficient to withstand summary judgment.

## I

### STANDARD FOR SUMMARY JUDGMENT

A court may dispose of a case on summary judgment before trial only where there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). The standard test for summary judgment is "whether a fairminded jury could return a verdict for the [nonmovant] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Before trial, a party must be able "to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In evaluating the nonmoving parties' showing, this court has directed the trial judge to consider the cumulative effect of the evidence, *Catrett v. Johns–Manville Sales Corp.*, 826 F.2d 33, 39–40 (D.C.Cir.1987), and to grant all reasonable inferences to the nonmoving party, *Exxon Corp. v. FTC*, 663 F.2d 120, 126 (D.C.Cir. 1980). The trial court, then, may grant summary judgment only if there is no "significantly probative" evidence tending to support the complaint. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

The "significantly probative" test does not require the nonmoving party to discredit every conceivable alternative theory of causation. As this court noted in *Elliott v. Michael James, Inc.*, 507 F.2d 1179 (D.C.Cir.1974), "there is no requirement that the circumstances, to justify the inferences sought, negative every other positive or possible conclusion." To be significantly probative, evidence need only be sufficient to permit a reasonable juror, indulging all reasonable inferences, to find that the party proved the element at issue.

In reviewing a district court's decision on a summary judgment motion, our role is no different. *Liberty Lobby, Inc. v. Anderson*, 746 F.2d 1563 (D.C.Cir.1984),

*vacated on other grounds in Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Since pretrial summary judgment decisions are rendered exclusively on the basis of a "paper" record, an appellate court is equally well-positioned as a trial judge to assess the evidence at issue. Accordingly, our review of the district court's conclusions is *de novo*. *Id.* at 1571.

## II

### THE DISTRICT COURT'S FINDINGS OF FACT

The district court found that appellant had not presented sufficient affirmative proof in her pretrial papers to carry her burden of establishing that she was exposed to DES, because none of the affidavits she offered—either separately or in combination—conclusively supported exposure. 697 F.Supp. 12, 15. The court observed that Mrs. Shields could not positively state that she had been given DES. Likewise, the trial judge found that Nurse Clifford's testimony did not establish that Dr. Sinclair routinely administered DES nor eliminate the possibility that he administered progesterone. Dr. Tice's testimony was also deficient because it did not rule out the possibility that "less-commonly used" progesterones might have come in a red tablet. Finally, the judge dismissed all of the medical experts' testimony as equivocal.

The trial court identified as its "critical finding" that "there is no reasonable basis upon which to infer, as plaintiff avers, that the pill was none other than DES." 697 F.Supp. at 15. On motion for reconsideration, the trial court explained that this was appellant's "fatal defect": "plaintiff has not shown that the pill plaintiff's mother recalls taking 'looks like DES, not a congener ... or a progesterone.'" 704 F.Supp. at 263. The court stated that Dr. Tice's affidavit "still fails to provide the crucial nexus between plaintiff's mother and defendant, and certainly does not show ... that 'the only small red pill commonly used to prevent miscarriage in 1955 was DES.'" *Id.*

The trial court has changed the burden of proof into a certainty of proof. It held that none of the evidence, even if fully credited, could disprove the possibility that appellant had not been exposed to DES and that her condition was the product of other forces. That is not the law.

As noted, the "significantly probative" test requires only that the evidence—singly or collectively—be sufficient to support a reasonable inference that substantiates a party's claim. It is, of course, possible that Dr. Sinclair departed from his normal practice and gave Mrs. Shields a placebo or a cold medicine; it could well be that Mrs. Shields' Kansas City pharmacist produced small red progesterone tablets in his basement, unbeknownst to pharmaceutical historians. But these possibilities merely raise questions to be considered by the jury—not insurmountable barriers to getting a case to the jury. "Significantly probative" means only that, if accepted, the facts make it more likely than not that the element pressed by appellant is present. Whether or not the element is present in fact is for the jury to decide.

Applying this standard to the evidence presented on summary judgment, appellant amply carried her burden of showing evidence that would support her claim of exposure. Nurse Clifford's and Dr. Tice's testimony *are* significantly probative of exposure. Like the trial judge, we are bound to accept as true Mrs. Shields' claim that Dr. Sinclair prescribed a small red pill as treatment for her staining. Nurse Clifford's testimony supports the conclusion that Dr. Sinclair administered either DES or progesterone to Mrs. Shields, since these were the only pills that he normally prescribed for women who were experiencing staining. Dr. Tice's affidavit was introduced to rule out the possibility that the pill Mrs. Shields remembers was progesterone. He stated that "there was no progesterone or progesterone-type medication commonly and ordinarily on the market and dispensed which was red in color and smaller than an aspirin in size." Taking these statements together, a reasonable juror could conclude that the only medication that fits the medical and physical descrip-

tion of the drug which Mrs. Shields took while pregnant with appellant was DES.

In a factually similar case, *Bulthuis v. Rexall Corp.*, 777 F.2d 1353 (9th Cir.1985), the Ninth Circuit held that a DES plaintiff could defeat a motion for summary judgment based entirely upon the statement of her doctor that he sometimes prescribed DES (although he did not recall whether he prescribed it for the plaintiff's mother) and upon the testimony of two physicians that they believed the plaintiff had been exposed to DES based upon the nature of her ailments. The facts present here are, if anything, more compelling than in *Bulthuis*. Appellant has offered evidence not only that the doctor prescribed DES under certain circumstances, but also that he prescribed medication for her mother under those very circumstances. Not only does appellant have statements by experts who believe that her ailments are DES-based, but also two of these experts drew their conclusions prior to her contracting cancer and one expert concluded that the medical evidence of DES exposure is not subject to dispute. The question framed had more than enough hard, probative evidence to go to the jury for its ultimate conclusion.

## CONCLUSION

■ In a world short of absolutes, the jury is called upon to process less than perfect evidence. Litigants may not offer speculations or slight possibilities in support of their claims; but neither are they limited to offering only the incontrovertible. The jury's function contemplates that evidence may be less than indubitable. Appellant produced more than sufficient evidence for a reasonable juror to conclude that she had been exposed to DES. Appellant offered evidence that her mother's doctor prescribed DES to patients who experienced staining during pregnancy, that her mother received medication for such staining, that the medication matched the description of DES and no other likely drug, and that several doctors who examined Shields both before and after she contracted cancer expressed the belief that she had been exposed to DES. This evidence was significantly probative of exposure. Every conceivable alternative theory of causation need not be extirpated by a litigant seeking the jury's decision.

The trial court's grant of summary judgment is reversed; we remand the case for further proceedings in accordance with this opinion.

*It is so Ordered.*