**James BROWN, Appellee/Cross–Appellant,**

v.

**SECRETARY of the ARMY, Appellant/Cross–Appellee.**

**Nos. 95–5026, 95–5048.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 15, 1995.

Decided March 12, 1996.

Daniel F. Van Horn, Assistant United States Attorney, Washington, DC, argued the cause, for appellant Secretary of the Army, with whom Eric H. Holder, Jr., United States Attorney, and R. Craig Lawrence, Assistant United States Attorney, were on the briefs.

Roger E. Warin, Washington, DC, argued the cause, for appellee James Brown, with whom Clifford E. Greenblatt and Joseph M. Sellers were on the briefs. John R. Erickson entered an appearance.

Before: EDWARDS, Chief Judge, GINSBURG and HENDERSON, Circuit Judges.

GINSBURG, Circuit Judge:

In this litigation of Dickensian protraction, James E. Brown, a civilian employee of the U.S. Army, alleged and for the most part established that he was the victim of repeated employment discrimination based upon his race. In the last chapter Brown prevailed on the merits of a Title VII suit alleging that the Army discriminated against him in refusing to hire him into a GS–9 position; he received an award of back pay, placement in an appropriate position, and a permanent injunction against the Army's engaging in any further discrimination against him. *See Brown v. Marsh*, 713 F.Supp. 20 (D.D.C.1989), *affd. sub nom. Brown v. Secretary of the Army*, 918 F.2d 214 (D.C.Cir. 1990). Today we write the epilogue to this nearly 20–year saga.

After resolving the merits of Brown's Title VII claim, the district court awarded Brown attorney's fees and costs pursuant to 42 U.S.C. § 2000e–5(k). The district court later awarded interest on those fees and costs, invoking the authority of § 114(2) of the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071, 1079 (codified as an amendment to 42 U.S.C. § 2000e–16(d)). The Government now appeals the award of interest on the ground that the 1991 Act, which became effective while the case was pending, cannot be applied retroactively against the United States. In a cross-appeal Brown challenges the district court's use of the rate of interest on Treasury Bills, rather than the prime rate, to determine the amount of prejudgment interest he is due. As it turns out, we need not reach this issue.

We hold that sovereign immunity bars application of the interest provision retroactively to this case. A waiver of sovereign immunity must be strictly construed; it may not be applied retroactively unless the Congress clearly so intended. Wanting direction from the legislature that § 114(2) is to be applied retroactively, we vacate the district court's award of interest on Brown's attorney's fees.

I. Background

Brown's petition for attorney's fees, expenses, and interest was pending when the Congress passed the Civil Rights Act of 1991. By the terms of that Act, each provision was to "take effect upon enactment" (that is, on November 21, 1991) unless otherwise specifically provided. § 402(a), Pub.L. 102–166, 105 Stat. 1071, 1099 (1991).

In § 114(2) of the Act the Congress amended the portion of Title VII that applies to federal employees so as to provide that "the same interest to compensate for delay in payment shall be available as in cases involving nonpublic parties." 42 U.S.C. § 2000e–16(d). This provision was enacted in response to the decision in *Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), in which the Supreme Court had held that a party prevailing in a Title VII suit against the Government was not entitled to interest on attorney's fees because the provision permitting the award of attorney's fees did not expressly waive sovereign immunity from such liability.

The district court awarded Brown attorney's fees and other expenses in August 1992, but it reserved the issue of interest on the fee award pending a final decision on the retroactivity of the 1991 Act in *Gersman v. Group Health Assn., Inc.*, 975 F.2d 886 (D.C.Cir.1992), *cert. denied*, — U.S. —, 114 S.Ct. 1642, 128 L.Ed.2d 363 (1994). Following our decision in *Gersman* and the Supreme Court's subsequent decision in *Landgraf v. USI Film Products*, — U.S. —, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), Brown renewed his request for interest on his award of attorney's fees. In *Landgraf* the Supreme Court reaffirmed its earlier holding in *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), that a court should generally apply the version of a statute, including any amendment, that is in effect at the time of its decision. Because the compensatory and punitive damage provisions of the 1991 Act would attach new substantive legal burdens to past conduct, however, the Court held that those provisions could not be applied retroactively. — U.S. at —, 114 S.Ct. at 1506.

Relying primarily upon *Landgraf,* the district court held that § 114(2) does apply retroactively to this case, entitling Brown to interest on his attorney's fees and expenses. *See Brown v. Marsh,* 868 F.Supp. 15 (D.D.C. 1994). The court reasoned that § 114(2) does not change any party's substantive rights because it "merely extends" to the Government the liability for interest on attorney's fees that private defendants already faced. *Id.* at 18. Moreover, the court said, the interest provision must be deemed collateral to the parties' substantive rights because the award of attorney's fees is itself "uniquely separable from the cause of action to be proved at trial." *Id.*

On appeal the Government argues, inter alia, that the interest provision of the 1991 Act is a waiver of sovereign immunity and therefore must be construed narrowly; because neither the text of the statute nor its legislative history indicates that the Congress intended it to apply retroactively, the provision cannot apply in this case. Brown retorts that a waiver of sovereign immunity must be construed narrowly only with respect to its scope; whether the waiver applies retroactively is a separate question that may be answered with reference to the principles of statutory construction laid down in *Bradley* and *Landgraf.*

■ The Government's sovereign immunity argument was raised for the first time on appeal. As Brown must concede, however, that is not a bar to our considering it. Whether the United States has consented to be sued "is the sort of jurisdictional question which may be raised at any time, either by the parties or by the court sua sponte." *Mellos v. Brownell,* 250 F.2d 35, 36 (D.C.Cir. 1957); *see United States v. United States Fidelity & Guaranty Co.,* 309 U.S. 506, 514, 60 S.Ct. 653, 657, 84 L.Ed. 894 (1940) ("Consent alone gives jurisdiction to adjudge against a sovereign. Absent that consent, the attempted exercise of judicial power is void").

■ Whether § 114(2) applies retroactively to this case is a question of law that was resolved by the district court upon a motion for summary judgment. Accordingly, we review the district court's decision *de novo.*

*See Shields v. Eli Lilly & Co.,* 895 F.2d 1463, 1465–66 (D.C.Cir.1990).

## II. Analysis

Nothing in either the text or the legislative history of the 1991 Civil Rights Act indicates that the Congress intended the entire Act to apply retroactively. *Landgraf,* —— U.S. at —— — ——, 114 S.Ct. at 1493–96; *see also Gersman,* 975 F.2d at 888–92. Two provisions were explicitly made prospective only; the rest of the Act was to "take effect upon enactment." § 402(a), Pub.L. No. 102–166, 105 Stat. 1071, 1099 (1991). Absent any direction from the Congress, whether a particular provision of the Act applies retroactively to a case pending when the statute was enacted—that is, to a case arising from conduct that occurred before it was enacted—is a matter of statutory construction. *Cf. Landgraf,* —— U.S. at ——, 114 S.Ct. at 1496. The crucial issue in this case is which principle of statutory construction—the principle of *Shaw* and *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685–86, 103 S.Ct. 3274, 3277–78, 77 L.Ed.2d 938 (1983), applicable to waivers of sovereign immunity, or the principles of *Bradley* and *Landgraf,* which apply to retroactivity in general—should guide our interpretation of § 114(2).

### A. Retroactivity under *Bradley* and *Landgraf*

■ As a general matter, in order to determine whether a statute has retroactive effect, the court first "must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Landgraf,* —— U.S. at ——, 114 S.Ct. at 1499. If not, then the court "is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley,* 416 U.S. at 711, 94 S.Ct. at 2016; *see United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 102 (1801); *Gersman,* 975 F.2d at 893.

The principle that a court is to apply the law as it is at the time of decision was most fully explicated by the Supreme Court in

*Bradley.* The district court in that case, relying upon general equitable principles, had awarded attorney's fees and costs to the prevailing plaintiffs in a desegregation suit against a public school board. While the case was before the Fourth Circuit, the Congress enacted a statute expressly authorizing such awards. After vacating the district court's equitable award, the court of appeals held that the new statute could not be applied to attorney's fees for services rendered before the effective date of the statute. The Supreme Court reversed, holding that the plaintiffs were entitled to attorney's fees under the statute on the principle that, barring manifest injustice or statutory direction to the contrary, "a court is to apply the law in effect at the time it renders its decision." 416 U.S. at 711, 94 S.Ct. at 2016.

Twenty-five years later, in *Landgraf,* the Court made clear that the principle of *Bradley* is applicable only to nonsubstantive matters; it does not displace "the traditional presumption against applying statutes affecting substantive rights, liabilities, or duties to conduct arising before their enactment." — U.S. at ——, 114 S.Ct. at 1504. The new statute at issue in *Bradley,* the Court noted, affected only attorney's fee awards, which are "collateral to the main cause of action and uniquely separable from the cause of action to be proved at trial," *id.* at ——, 114 S.Ct. at 1503; the statute did not impose a new substantive liability for pre-enactment conduct. From this distinction one might well infer that a statute authorizing the award of interest on attorney's fees would also fall within the play-it-as-it-lies principle of *Bradley.*

The statute at issue in *Bradley,* however, was not a waiver of the sovereign immunity of the United States; rather, it was an explicit statutory authorization for the award of attorney's fees in desegregation cases—a type of award that was available as an equitable matter before the enactment of the statute and was not barred by Eleventh Amendment immunity. 416 U.S. at 721, 94 S.Ct. at 2021. As a result, the Supreme Court in *Bradley* had no occasion to advert to the special principle of statutory construction that it had previously made applicable to

waivers of sovereign immunity. In this case, however, we must consult that principle.

**B. Sovereign Immunity**

■ A statute waiving the sovereign immunity of the United States must be construed strictly. *Shaw,* 478 U.S. at 318, 106 S.Ct. at 2963; *Ruckelshaus,* 463 U.S. at 685–86, 103 S.Ct. at 3277–78. Indeed, such a waiver is to be read no more broadly than its terms require. As the Supreme Court has more than once said with specific reference to a statute arguably waiving the immunity of the United States from the assessment of interest:

> There can be no consent by implication or by use of ambiguous language. Nor can an intent on the part of the framers of a statute or contract to permit the recovery of interest suffice where the intent is not translated into affirmative statutory or contractual terms. The consent necessary to waive the traditional immunity must be express, and it must be strictly construed.

*Shaw,* 478 U.S. at 318, 106 S.Ct. at 2963 (quoting *United States v. N.Y. Rayon Importing Co.,* 329 U.S. 654, 659, 67 S.Ct. 601, 604, 91 L.Ed. 577 (1947)). This rule of strict construction controls our analysis both in determining whether the United States has consented to be sued and in defining the scope of that consent. *See Nichols v. Pierce,* 740 F.2d 1249, 1257 (D.C.Cir.1984) ("The policies inherent in the rule requiring strict construction of waivers of sovereign immunity strongly suggest that any doubts about the scope of a waiver be resolved in favor of the narrower governmental liability"); *see also In re Nofziger,* 938 F.2d 1397, 1403 (D.C.Cir.1991) (refusing to interpret waiver more broadly than terms required and noting such waivers not subject to equitable expansion).

■ The courts have marshaled both historical and practical considerations in support of the doctrine of sovereign immunity and its appendant rule that waivers are to be construed narrowly. *See generally United States v. Lee,* 106 U.S. (16 Otto) 196, 27 L.Ed. 171 (1882). From an historical perspective, the doctrine rests upon the notion that "it would contradict the sovereignty of

the king to allow him to be sued as of right in his own courts." *Hunt v. United States,* 636 F.2d 580, 583 (D.C.Cir.1980). The sovereignty of the king has been succeeded by the sovereignty of the people, acting through their elected delegates, but the rule of strict construction still serves to insure that courts defer to the precise terms of their consent. In addition, as a practical matter:

> The doctrine rests upon reasons of public policy; the inconvenience and danger which would follow from any different rule. It is obvious that the public service would be hindered, and the public safety endangered, if the supreme authority could be subjected to suit at the instance of every citizen, and consequently controlled in the use and disposition of the means required for the proper administration of the government.... [The United States] cannot be subjected to legal proceedings at law or in equity without their consent; and whoever institutes such proceedings must bring his case within the authority of some act of Congress.

*The Siren,* 74 U.S. (7 Wall.) 152, 154, 19 L.Ed. 129 (1868). The rule of strict construction is thus arguably necessary, as we once put it, to "protect[ ] the United States Treasury from potentially excessive liabilities which Congress did not anticipate." *Nichols,* 740 F.2d at 1255. While it may not be entirely clear why the Treasury of the United States is any more in need of protection from "excessive liabilities" than is, say, General Motors, the rule of strict construction is itself clear. What is more, the rule is clearly understood to be the background against which the Congress acts when it waives sovereign immunity: we must presume that a Congress that intends to waive sovereign immunity is aware of the principles that will govern our reading of the waiver. Therefore, having said that we would take the legislature strictly at its word when it specifies whether and to what extent it waives sovereign immunity, we are bound to infer that it intended no more than it said.

## C. Retroactivity of a Waiver of Sovereign Immunity

■ The present case poses the question: Does the rule of strict construction also govern our analysis of whether an undoubted waiver of sovereign immunity is to be given retroactive effect? Brown argues that the retroactivity of a waiver may be analyzed differently from other aspects of the scope of the waiver; once we have determined that the statute waives sovereign immunity from interest on attorney's fees, we may resolve the question of retroactivity with reference to the usual rules of statutory interpretation. In view of the rationale for the rule of strict construction, however, we can see no reason why it should not constrain us equally whether we plumb the depth or measure the breadth of a waiver. We run the same risk of imposing upon the public fisc an unanticipated and potentially excessive liability, whether we hold that a statute waives sovereign immunity from an element of damages not contemplated by the Congress or we apply the waiver over a period that the Congress did not envision. *See In re Jordan,* 745 F.2d 1574, 1576 (D.C.Cir.1984) (holding attorney's fee amendment to Ethics Act not retroactive because "[w]aivers of sovereign immunity must be strictly construed.... [T]he fact that the amendment does not specifically exclude retroactive fee applications is of little importance to our construction of the amendment"); *see also Woolf v. Bowles,* 57 F.3d 407, 410 (4th Cir.1995) ("*Shaw*'s reminder that waivers of interest immunity are to be strictly construed ... provides further support for our conclusion [that under *Landgraf* § 114(2) of the 1991 Act cannot apply retroactively to authorize interest on back pay against the Government]"); *Huey v. Sullivan,* 971 F.2d 1362, 1365 (8th Cir.1992) (concluding that precursors to *Landgraf* bar retroactive application of § 114(2) in back pay cases, and noting that "the policy requiring that waivers of sovereign immunity be construed strictly in favor of the United States ... makes a finding of no retroactivity even more compelling in this case"). But see *Campbell v. United States,* 809 F.2d 563, 577 (9th Cir.1987), discussed in Part II.C.2 below.

As they relate to the question whether a statute is retroactive, then, it would seem that the *Bradley* presumption and the rule of strict construction are antipodal. In the usual case—that is, the case in which no waiver

of sovereign immunity is involved—*Bradley* requires the court to presume that the newly enacted provision is retroactive; only where manifest injustice would result, or where the Congress can be seen to have intended otherwise, is that presumption rebutted. In the special case, however, in which the newly enacted statute is a waiver of sovereign immunity, the rule of strict construction requires the opposite: the statute is to be construed no more broadly than is required by its terms.

We considered and rejected the application of *Bradley* to a case involving the waiver of sovereign immunity in *Nichols v. Pierce, supra.* That case concerned the waiver of immunity in the Equal Access to Justice Act for attorney's fees incurred by plaintiffs in cases "pending on, or commenced on or after" October 1, 1981. Pub.L. 96–481, § 208, 94 Stat. 2321, 2330 (1980). The appellant had filed suit against the Government, and the substance of her claim had been fully litigated, long before that date. The only aspect of the case still "pending" on October 1 was the plaintiff's appeal from the district court's order denying her the attorney's fees she sought under the Freedom of Information Act. We concluded that the EAJA did not apply to a case in which the only matter still pending concerned a petition for the award of attorney's fees. 740 F.2d at 1261. *Bradley* was "readily distinguishable": the United States was not the defendant in that case. *Id.* at 1258 (citing, inter alia, *Commissioners of Highways v. United States,* 684 F.2d 443, 443–45 (7th Cir.1982)); *accord Tongol v. Donovan,* 762 F.2d 727, 730–32 (9th Cir.1985) (following *Nichols*); *Commissioners of Highways,* 684 F.2d at 444 (reaching same result in case similar to *Nichols* and distinguishing *Bradley* on ground it "did not involve the issue of [the] sovereign immunity of the United States"); *Berman v. Schweiker,* 713 F.2d 1290, 1301 n. 28 (7th Cir.1983) ("Our observation in *Commissioners of Highways* that *Bradley* did not involve a sovereign immunity bar reflects a critical distinction between the two cases—one that required a different analysis of the retroactive fee issue ..."); *Van Meter v. Barr,* 778 F.Supp. 83, 85–86 (D.D.C.1991); *cf. Edwards v. Lujan,* 40 F.3d 1152, 1153–54 & n. 1 (10th Cir.1994) (holding that § 114(2) does not apply retroactively to authorize interest on attorney's fees, based solely upon conclusory analogy to *Landgraf*). Because the Court in *Bradley* was not faced with a purported waiver of sovereign immunity, it interpreted the new statute broadly, without insisting upon the special rule requiring narrow construction of such a waiver. In this case as in *Nichols,* however, we must insist upon it.

We do well to remember that principles of statutory construction are not ends in themselves; they are the tools with which we discern the intent of a legislature that has not made its intent explicit. In this case, which must be viewed against the background of *Shaw,* the failure of the Congress to be explicit puts into stark relief the importance of applying the rule of strict construction to each aspect of a waiver of sovereign immunity. Before the 1991 amendments, Title VII had provided simply that "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee ... as part of the costs, and the [EEOC] and the United States shall be liable for costs the same as a private person." 42 U.S.C. § 2000e–5(k). This court held that because a court could award interest on the attorney's fee in a suit against a private employer, the just-quoted provision authorized the court equally in a case against the Government to award interest on the attorney's fee. The Supreme Court reversed, stating: "The statute, as well as its legislative history, contains no reference to interest. This congressional silence does not permit us to read the provision as the requisite waiver of the Government's immunity with respect to interest." 478 U.S. at 319, 106 S.Ct. at 2964. The Court reaffirmed the rule that waivers must be construed strictly in favor of the sovereign and emphasized that the "no-interest" rule— the historical rule that interest is a separate element of damages and may be recovered only against a party that has agreed to be liable therefor—provides "an added gloss of strictness" upon the rule of strict construction. *Id.* at 318, 106 S.Ct. at 2963; *see also Thompson v. Kennickell,* 797 F.2d 1015, 1017 (D.C.Cir.1986) ("These principles of sover-

eign immunity take on added force when applied to claims of interest against the United States," citing "no-interest" rule). Shortly thereafter, the Congress responded to *Shaw* by adding to Title VII an express waiver of sovereign immunity from interest. Notwithstanding the Court's obvious intention to construe that waiver narrowly, however, the Congress said nothing to indicate that the provision should be applied retroactively. In these circumstances we cannot infer that the Congress anticipated a broader application of § 114(2) than is required by its terms.

*1. Thompson v. Sawyer.* Brown nonetheless contends that our own precedents require that we treat the question of retroactivity by reference to the presumption laid out in *Bradley* and not as we treat other aspects of the scope of a waiver of sovereign immunity. In this connection Brown draws our attention to *Thompson v. Sawyer,* 678 F.2d 257 (D.C.Cir.1982), in which we held that certain statutory amendments making back pay and damages available to employees of the Government Printing Office could be applied retroactively to compensate employees for a period beginning before the effective date of the amendments. Indeed, quoting *Bradley,* we invoked the "basic rule" that "a court is to apply the law in effect at the time it renders its decision." 678 F.2d at 279. In an opinion by Judge Mikva before he said goodbye to footnotes, the court addressed the issue of sovereign immunity only in the margin, as follows:

> GPO contends that sovereign immunity insulates it from retrospective liability under both the Equal Pay Act and Title VII. Congress, however, waived sovereign immunity by authorizing suits against the federal government under the FLSA. *See United States v. Testan,* 424 U.S. 392 [96 S.Ct. 948, 47 L.Ed.2d 114] (1976). The question we face is whether Congress intended the statutory change, and hence the waiver, to have only prospective thrust.

*Id.* at 281 n. 23; *see also id.* at 289 n. 33.

In *Thompson* we were concerned with a rather narrow class of cases—those in which the conduct for which the Government is liable began before but continued beyond the effective date of the statute. *See Stoller v.*

*Marsh,* 682 F.2d 971, 974 (D.C.Cir.1982) (citing *Thompson*). That is no doubt why, although we have often cited *Thompson,* it has never been to suggest in any way that a waiver of sovereign immunity may be applied retroactively if the Congress was silent upon that question. On the contrary, Judge Mikva later characterized *Thompson* as a case of the court following known congressional intent and holding "that the 1972 amendments ... had simply extended to federal employees a remedy for illegal discrimination, and that Congress had intended that remedy to be applied to the fullest extent." *McKenzie v. Sawyer,* 684 F.2d 62, 78 (D.C.Cir.1982); *cf. Cuneo v. Rumsfeld,* 553 F.2d 1360 (D.C.Cir. 1977) (provision in FOIA authorizing awards of attorney's fees applied retroactively despite rule of strict construction because legislative history showed that Congress intended that existing body of law governing attorney's fees be used to determine whether award could be made against Government).

Moreover, after the Supreme Court had decided *Ruckelshaus* (about a year after our decision in *Thompson* ), "reaffirming" that the rule of strict construction applies to waivers of sovereign immunity from attorney's fees and "cautioning courts against enlarging these waivers beyond the explicit statutory language," *Nichols,* 740 F.2d at 1255–56, we expressly relied upon the rule of strict construction in holding that a statute waiving sovereign immunity from attorney's fees could not be applied retroactively to cover fees incurred before the effective date of the statute because the Congress did not state or imply that it intended that result. *See In re Jordan,* 745 F.2d at 1576. We reached this holding without any suggestion that it was in tension with *Thompson.* We see no reason why *Thompson* should be of any more help to Brown today than it was to Hamilton Jordan in 1984.

*2. Hill v. United States.* Brown also relies upon *Hill v. United States,* 571 F.2d 1098, 1102 (1978), in which the Ninth Circuit held that § 702 of the Administrative Procedure Act applies retroactively to waive sovereign immunity from declaratory and affirmative relief arising out of conduct that occurred before the effective date of the

1976 amendments to the APA. The court in *Hill* analyzed the retroactivity of § 702 using the framework of *Bradley*, without reference to the rule of strict construction; that the provision was a waiver of sovereign immunity was considered only in the course of determining whether it would be a manifest injustice to apply the statute retroactively. *Id.*

We note in this regard that the continued vitality of *Hill* as the law of the Ninth Circuit is very doubtful. The court adhered to *Hill* later the same year in *Rawlings v. Heckler*, 725 F.2d 1192, 1194–95 (9th Cir.1984) (holding attorney's fees incurred before effective date of EAJA recoverable in case pending on effective date, and rejecting Government's attempt to distinguish *Bradley* on sovereign immunity grounds). In the following year, however, the court limited *Rawlings* and distinguished it from a case raising the issue that we faced in *Nichols v. Pierce*—that is, whether a fee petition pending on the effective date of a statute authorizing an award of attorney's fees brings the case within the class of covered cases "pending on" the effective date. *See Tongol*, 762 F.2d at 730–32. The Ninth Circuit, following our holding and analysis in *Nichols*, distinguished *Bradley* because it did not involve a waiver of sovereign immunity and noted that *Nichols* "more closely reflect[ed] the approach mandated by latest teachings of the Supreme Court," namely the "principles of narrow construction." *Id.* at 732. Then, in a 1987 case involving the retroactive application of a statute that changed the index that determines (but did not necessarily raise) the rate of postjudgment interest payable by the Government, the court acknowledged the rule of strict construction in *Tongol* but then cited *Hill* and *Rawlings* with approval, stating that "[t]he principle of sovereign immunity does not require us to resolve all doubtful questions concerning the temporal applicability of a statute in the government's favor when the literal requirements of the statute are otherwise met." *Campbell*, 809 F.2d at 577. That case, however, was effectively overruled by the Supreme Court, which concluded, in a case against a private defendant in which sovereign immunity was not implicated at all, that the statute could not be

applied retroactively to a judgment entered before the effective date of the statute. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990).

Finally, in considering whether to apply the provision at issue in this case to authorize interest on back pay in a case against the Government that was pending upon enactment of the statute, the Ninth Circuit discussed the retroactivity issue in *Bradley*-inspired terms without considering the rule of strict construction it had recognized in *Tongol* for cases against the sovereign. *See Estate of Reynolds v. Martin*, 985 F.2d 470, 472–73 (9th Cir.1993). Ultimately, however, the court concluded instead that the plain language of the 1991 Act indicates that the Congress intended that it be applied retroactively. *See id.* at 476. Inasmuch as the Supreme Court has since made clear that neither the language nor the legislative history shows an intent that the 1991 Act as a whole be applied retroactively, *see Landgraf*, — U.S. at — – —, 114 S.Ct. at 1493–96, it is unclear how the Ninth Circuit would now resolve the question whether § 114(2) in particular is retroactive. If it recalls the distinction it drew in *Tongol* —its last word on the subject apart from the decisions effectively overruled in *Kaiser Aluminum* or cast into doubt by *Landgraf*—then it will reach the same conclusion we do. *See also United States v. Matson Nav. Co. (The Louie III)*, 201 F.2d 610, 616 (9th Cir.1953) ("waiver of sovereign immunity creates a new cause of action which has no retroactive effect unless specifically granted"). In any event, the present state of the law on this issue in the Ninth Circuit is at best unclear and does not give us pause.

*3. Other Cases.* The remainder of the cases to which Brown refers are simply inapposite. In *Hutto v. Finney*, 437 U.S. 678, 693–98, 98 S.Ct. 2565, 2574–78, 57 L.Ed.2d 522 (1978), the Supreme Court held that a statute authorizing fee-shifting in civil rights cases applied retroactively against the State of Arkansas, but only after concluding that the statute made fees part of the "costs" awarded to a prevailing plaintiff, which had never been barred by the sovereign immuni-

ty of the States recognized in the Eleventh Amendment. In *Natural Resources Defense Council, Inc. v. EPA,* 703 F.2d 700 (3d Cir. 1983), the Third Circuit did not even mention sovereign immunity in concluding that the statute in question applied retroactively against the United States. And both the Seventh Circuit in *Adams v. Brinegar,* 521 F.2d 129 (7th Cir.1975), and this court in *Womack v. Lynn,* 504 F.2d 267 (D.C.Cir. 1974), held that a statute authorizing judicial review of a federal employee's administrative claim of employment discrimination applied retroactively because the statute provided merely that the employee would have access to a judicial forum and did not create a new substantive liability in derogation of sovereign immunity. None of these cases supports the argument that we should resolve the question whether the waiver of sovereign immunity in this case may be applied retroactively by consulting the principle of *Bradley* rather than the rule of strict construction.

## III. Conclusion

Despite the Supreme Court's reaffirmation in *Ruckelshaus* and in *Shaw* that waivers of sovereign immunity must be construed narrowly, there remains considerable confusion about the relationship between that special rule and the principles governing the retroactivity of statutes in general. In addition to the district court in this case, the Fourth, Eighth, and Tenth Circuits have considered whether a waiver of sovereign immunity is retroactive as though the question were to be answered in part by reference to the principles in *Bradley* and *Landgraf. See Woolf,* 57 F.3d at 410; *Huey,* 971 F.2d at 1365–66; *Edwards,* 40 F.3d at 1153–54 & n. 1. In this case we face yet again a party arguing that we should apply the analysis in *Bradley* to a case involving a waiver of sovereign immunity. Until the Supreme Court changes its position, however, we believe that the rule of strict construction displaces the *Bradley* analysis when the question is whether a waiver of sovereign immunity is to be applied retroactively.

■ Section 114(2) of the 1991 Act waives sovereign immunity with respect to interest on attorney's fees awarded under Title VII.

In the case at hand, the litigation on the merits of Brown's claim was completed and the attorney's fee incurred before the statute became effective. Therefore, to apply § 114(2) retroactively in this case would be to impose upon the United States a liability to which it has not explicitly consented. The order of the district court awarding interest on Brown's attorney's fees and expenses is accordingly

*Reversed.*