Yvonne G. TROUT, et al., Appellees,

v.

SECRETARY OF THE NAVY and Commanding Officer, Naval Command Systems Support Activity, Appellants.

No. 01–5325.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 6, 2002.

Decided Jan. 31, 2003.

Daniel F. VanHorn, Assistant U.S. Attorney, argued the cause for appellants. With him on the briefs were Roscoe C. Howard, Jr., U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney.

Bradley G. McDonald argued the cause for appellees. With him on the brief were John F. Karl, Jr. and Nancy J. Malir.

Bruce A. Fredrickson, Susan L. Brackshaw, and Jonathan C. Puth were on the brief for amicus curiae Metropolitan Washington Employment Lawyers Association in support of appellees.

Before: EDWARDS, ROGERS and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

In the most recent chapter of this extremely protracted litigation, the district court, invoking § 114(2) of the Civil Rights Act of 1991 ("Act"), Pub.L. No. 102–166, 105 Stat. 1071, 1079 (codified as an amendment to 42 U.S.C. § 2000e–16(d)), ordered the U.S. Navy to pay prejudgment interest on backpay and attorneys' fees for periods before November 21, 1991, to a class of women who successfully established that the Navy discriminated against them in employment on the basis of sex. *Trout v. England,* No. 73–55 (D.D.C. July 17, 2001); *see also Trout v. Dalton,* No. 73–55 (D.D.C. Aug. 12, 1998); *Trout v. Dalton,* No. 73–55 (D.D.C. July 22, 1998). The Navy appeals on the ground that § 114(2) cannot be applied retroactively to periods predating November 21, 1991, when § 114(2) became effective, citing *Brown v. Sec'y of the Army,* 78 F.3d 645 (D.C.Cir. 1996), *cert. denied,* 519 U.S. 1040, 117 S.Ct. 607, 136 L.Ed.2d 533 (1997), as dispositive. Appellees would distinguish *Brown* on the ground that the Navy's liability was not finally determined until after § 114(2) became effective. Because the holding in *Brown* rested on considerations of sovereign immunity as enhanced by the rule of no-interest against the sovereign, it is dispositive, and accordingly we reverse the

award of prejudgment interest to the Trout class for periods before November 21, 1991.

## I.

In 1991, when Congress enacted § 114(2), the Trout class action was almost twenty years old. The litigation began in 1973 when Navy computer analyst Yvonne Trout and other female employees of the Navy's computer operations center sued the Navy for sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The district court consolidated the complaints and certified a class of civilian women employees who worked for the Navy's computer operations center at any time between June 6, 1972 and June 4, 1979. In 1981, after a lengthy trial involving forty-two witnesses, more than 7,000 pages of exhibits, and extensive regression analyses demonstrating sex discrimination in the Navy's hiring, promotion, evaluation, and assignment of women, the district court found the Navy liable for violating Title VII, *Trout v. Hidalgo,* 517 F.Supp. 873 (D.D.C.1981), and granted relief to the Trout class in the form of backpay. *Trout v. Hidalgo,* 1981 WL 416 (D.D.C.1981). Following appeals by the Navy, *Trout v. Lehman,* 702 F.2d 1094 (D.C.Cir.1983); *vacated and remanded, Lehman v. Trout,* 465 U.S. 1056, 104 S.Ct. 1404, 79 L.Ed.2d 732 (1984), the district court reinstated its finding of discrimination in 1986 on remand. *Trout v. Lehman,* 652 F.Supp. 144 (D.D.C.1986).

On August 5, 1988, the district court made an interim award of attorneys' fees and costs to the Trout class, in the amounts of $276,044.00 and $15,434.01, respectively. *Trout v. Lehman,* 702 F.Supp. 3, 4 (D.D.C.1988). The Navy appealed the order to pay the interim attorneys' fees on grounds of sovereign immunity. *Trout v. Garrett,* 891 F.2d 332, 334 (D.C.Cir.1989). This court, on December 15, 1989, denied the Navy's petition for mandamus and dis-

missed the appeal because the Navy conceded, and the court agreed, that 42 U.S.C. § 2000e–5(k) "waives the United States' immunity from claims, whether final or interim, for attorneys' fees as an element of costs." *Id.,* 336.

While the award of interim attorneys' fees was pending appeal, the district court, on October 12, 1988, ordered backpay relief for the Trout class dating back to 1970, with individual hearings to be held before a special master to determine each claimant's entitlement. *Trout v. Webb,* 708 F.Supp. 358, 358–59 (D.D.C. 1988). After denying the Navy's motion for reconsideration, *Trout v. Ball,* 705 F.Supp. 705 (D.D.C.1989), the district court referred the claims to a special master with instructions to determine which statistical methodology was most appropriate for determining backpay. *Id.* at 358. By memoranda and orders of March 30, 1990 and December 27, 1990, the special master accepted the statistical analysis for calculating backpay provided by the Trout class, and identified the members of the class entitled to relief. *Trout v. Garrett,* 1990 WL 96640 (D.D.C.1990); *Trout v. Garrett,* 1990 WL 301806 (D.D.C.1990).

Six days after § 114(2) became effective, the district court, on November 27, 1991, issued an order that (1) identified the class members entitled to backpay, (2) accepted the special master's findings that the Trout class' regression analysis should be used to determine the amount of backpay, and (3) awarded an interim backpay award of $670,402.75 for the period from June 1970 through April 30, 1979. *Trout v. Garrett,* 780 F.Supp. 1396 (D.D.C.1991). Following this court's dismissal of the Navy's appeal of interim backpay for lack of jurisdiction, *Trout v. Sec'y of the Navy,* 971 F.2d 766 (D.C.Cir.1992) (per curiam), the district court ruled, on November 12, 1992, that the Trout class was entitled to

additional backpay because of the Navy's "indefatigable" and "inappropriate" delay tactics spanning twenty years of litigation, and expanded the backpay award to cover "1979 to the present," then November 12, 1992. *Trout v. O'Keefe,* 144 F.R.D. 587, 588 (D.D.C.1992).

By stipulation of January 22, 1993, the parties agreed that the Trout class was entitled to additional backpay in the amount of $368,277.18 for the period from June 1, 1979 through December 31, 1991. In a settlement agreement of September 20, 1993, the parties agreed the eligible Trout class members were entitled to backpay through December 31, 1991, and attorneys fees through May 17, 1993; the Trout class reserved the right to seek interest on backpay and attorneys fees under § 114(2). The district court approved the settlement agreement on November 22, 1993. Regarding the reservation in the settlement agreement for interest, the Navy advised the district court that the government's position was that § 114(2) was not retroactive, and consequently, interest did not begin to run on backpay and attorneys' fees until November 21, 1991. By stipulation of May 10, 1995, the Navy agreed to pay interest on backpay and attorneys' fees awards beginning on November 21, 1991, again preserving the Trout class's right to seek interest for periods prior to November 21, 1991.

After this court issued its decision in *Brown,* 78 F.3d 645, holding that § 114(2) did not apply to a period before its effective date, the district court awarded the Trout class prejudgment interest back to 1970. *Trout v. Dalton,* No. 73–55 (D.D.C. Aug. 12, 1998); *Trout v. Dalton,* No. 73–55 (D.D.C. July 22, 1998). The district court, adopting the Trout class' argument, interpreted *Brown* to bar § 114(2) interest only where the merits of the litigation had been completed before § 114(2) became effective, and concluded that "[b]ecause the in-

stant case was very much alive and being actively litigated on [November 21, 1991], *Brown* is not dispositive and the [Trout class members] are entitled to prejudgment interest." While acknowledging that the "liability phase" had ended on April 25, 1990, the district court focused on the fact that the "award phase" was ongoing when § 114(2) became effective. The court entered a final judgment for the Trout class on July 17, 2001, ordering the Navy to pay prejudgment interest, based on the prime rate, on backpay in the amount of $8,627,276.40, and interest on attorneys' fees in the amount of $1,477,020.90. *Trout v. England,* No. 73–55 (D.D.C. July 17, 2001).

## II.

■ Section 114(2) provides Title VII plaintiffs in suits against the federal government with "the same interest to compensate for delay in payment [as is available] in cases against nonpublic parties." 42 U.S.C. § 2000e–16(d). Whether § 114(2) permits prejudgment interest for periods prior November 21, 1991, when it became effective, is a question of law that the court reviews *de novo. Herbert v. Nat'l Academy of Sciences,* 974 F.2d 192, 197 (D.C.Cir.1992); *Cuddy v. Carmen,* 762 F.2d 119, 123 (D.C.Cir.1985). However, this appeal turns on the proper interpretation of *Brown,* which, absent *en banc* review, binds the court on the question of law. *See LaShawn A. v. Barry,* 87 F.3d 1389, 1395 (D.C.Cir.1996). We turn, then, to an examination of the analysis in *Brown.*

## A.

■ Statutes waiving the sovereign immunity of the United States are subject to the rule of strict construction. *Library of Congress v. Shaw,* 478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986);

*Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 3277–78, 77 L.Ed.2d 938 (1983). As such, waivers of sovereign immunity are to be read "no more broadly than [their] terms require." *Brown,* 78 F.3d at 649. Further, as the court had previously observed, "any doubts about the scope of a waiver [are to] be resolved in favor of the narrower governmental liability." *Nichols v. Pierce,* 740 F.2d 1249, 1257 (D.C.Cir.1984); *see also Shaw,* 478 U.S. at 318, 106 S.Ct. at 2963; *Ruckelshaus,* 463 U.S. 680, 685, 103 S.Ct. 3274, 3277–78. These principles of sovereign immunity understandably take on "an added gloss of strictness" when applied to claims of interest against the United States because the historical "no-interest rule" bars recovery of interest against the government "unless the award of interest was affirmatively and separately contemplated by Congress." *Shaw,* 478 U.S. at 315, 318–19, 106 S.Ct. at 2962, 2963–64; *see also Brown,* 78 F.3d at 651; *Thompson v. Kennickell,* 797 F.2d 1015, 1017 (D.C.Cir.1986).

In *Brown,* the court held that the rule of strict construction, enhanced by the no-interest rule, applies whether the court is examining a statute's substantive scope *or* its temporal reach. 78 F.3d at 650. The court's rationale was twofold. First, absent express direction from Congress that a statute is retroactive, to hold that a statute "waives sovereign immunity from an element of damages not contemplated by [ ] Congress" *or* applies to "a period of time not envisioned by Congress," risks "imposing upon the public fisc an unanticipated and potentially excessive liability." *Brown,* 78 F.3d at 650; *see also Shaw,* 478 U.S. at 316, 106 S.Ct. at 2962; *Nichols,* 740 F.2d at 1255. Second, the strict construction rule provides an important backdrop against which Congress acts when it waives sovereign immunity. Having indicated that this court "would take the legislature strictly at its word when it specifies whether and to what extent it waives sovereign immunity," the court in *Brown* concluded that it must presume that when Congress promulgates a waiver of sovereign immunity, it knows which principles will govern our interpretation of the waiver. *Id.*

Therefore, *Brown* examined the temporal reach of § 114(2) through the lens of strict construction, taking care not to extend the provision beyond Congress's intention. Finding no evidence in the text or the legislative history of the Civil Rights Act of 1991 that Congress intended its provisions to operate retroactively, *id.* at 648, and noting that with the exception of two provisions of the Act that operate prospectively, the Act otherwise states that it is to "take effect upon enactment," § 402(a), Pub.L. No. 102–166, 105 Stat. 1071, 1099, the court held that § 114(2) was inapplicable where the government's liability was established and attorney's fees were incurred before § 114(2) became effective. *Id.* at 647, 654. The court explained that to apply § 114(2) retroactively would be to impose liability on the government without its explicit, required consent. *Id.* at 654.

## B.

■ The only question, then, is whether the holding in *Brown* turns on the timing of the discriminatory conduct at issue, as the Navy contends, or on procedural posture of the case, as the district court concluded and the Trout class maintains on appeal. For the following reasons, we conclude that the district court misapplied *Brown*'s retroactivity analysis by focusing on the procedural posture of the *Trout* litigation rather than the conduct underlying the litigation.

The last paragraph of the opinion in *Brown* states in relevant part:

Section 114(2) of the 1991 Act waives sovereign immunity with respect to interest on attorney's fees awarded under Title VII. *In the case at hand, the litigation on the merits of Brown's claim was completed and the attorney's fee incurred before the statute became effective.* Therefore, to apply § 114(2) retroactively in this case would be to impose upon the United States a liability to which it has not explicitly consented. 78 F.3d at 654. Both the district court and the Trout class rely upon this paragraph as grounds for distinguishing the instant case in which the final judgment on the remedy was not entered until after § 114(2) became effective. *See Trout v. Dalton,* No. 73–55, slip op. at 2–3 (D.D.C. July 22, 1998); Appellee's Br. at 23. With the exception of the italicized language, however, nothing in *Brown* suggests that the availability of prejudgment interest turns on the procedural posture of the litigation. To the contrary, the court in *Brown* stated at the outset that the critical question was whether § 114(2) applies retroactively "to a case arising from *conduct* that occurred before it was enacted." 78 F.3d at 648 (emphasis added). The court thus understood its focus to be on the conduct underlying the complaint, not the status of the litigation itself. However confusing the reference to the status of the litigation in *Brown* may be, it can only be understood as illustrating that there was no basis for an award of prejudgment interest under § 114(2); it cannot reasonably be read as altering the analysis on which the court relied in rejecting retroactive application of § 114(2).

This understanding of the last sentence of the opinion in *Brown* is also clear from the fact that the court in *Brown* explained its task as one of reconciling the principles applicable to waivers of sovereign immunity, articulated in *Shaw* and *Ruckelshaus,* with the principles applicable to retroactivity, articulated in *Bradley v. Richmond*

*School Bd.,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), and *Landgraf v. USI Film Prods.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). 78 F.3d at 648. Adopting the rules of strict construction central to *Shaw* and *Ruckelshaus,* the court stated that "the rule of strict construction displaces the *Bradley* analysis [that a court is to apply the law in effect at the time of its decision] when the question is whether a waiver of sovereign immunity is to be applied retroactively." 78 F.3d at 654. The court did not displace, however, "the traditional presumption," affirmed in *Landgraf,* "against applying statutes affecting substantive rights, liabilities, or duties to *conduct* arising before their enactment." 511 U.S. at 278, 114 S.Ct. at 1504 (emphasis added); *see Brown,* 78 F.3d at 649–52. To the contrary, *Brown* was informed by the Supreme Court's holding in *Landgraf,* which declined to give retroactive effect, absent congressional intent, to provisions of the 1991 amendments that would attach new "monetary liability ... to *conduct* occurring before the statute's enactment." 511 U.S. at 284, 114 S.Ct. at 1507 (emphasis added). The two-part rationale in *Brown* for employing the rule of strict construction mirrors the Court's language in *Landgraf. Compare, e.g., Brown,* 78 F.3d at 649–50, *with Landgraf,* 511 U.S. at 265–66, 114 S.Ct. at 1496–98. Moreover, *Brown's* conclusion that retroactive application of § 114(2) would "impose upon the United States a liability to which it ha[d] not explicitly consented," *id.* at 654, was in keeping with *Landgraf's* instruction not to "impose[ ] new burdens on persons after the fact." 511 U.S. at 270, 114 S.Ct. at 1500.

The Supreme Court's decisions in *INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), and *Martin v. Hadix,* 527 U.S. 343, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999), remove any doubt that the conduct underlying the complaint, rather

than the procedural posture of the litigation, has significance in this context. Both *St. Cyr* and *Martin* reiterate the view that "elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their *conduct* accordingly ..." *St. Cyr,* 533 U.S. at 316, 121 S.Ct. at 2288 (citation omitted) (emphasis added); *see also Martin,* 527 U.S. at 346–61, 119 S.Ct. at 2000–08. Absent clear congressional intent, conduct "should be assessed under the law that existed when the conduct took place." *St. Cyr,* 533 U.S. at 316, 121 S.Ct. at 2288. It follows, as the statement in *Brown* illustrated, that § 114(2) does not apply to conduct that occurred before November 21, 1991. Here, the Navy's discriminatory conduct against the Trout class ended in 1979, before § 114(2) became effective. *Trout v. Garrett,* 780 F.Supp. 1396, 1400–01 (D.D.C.1991). Consequently, prejudgment interest may not be awarded to the Trout class on backpay or attorneys' fees for periods prior to that date. It is of no relevance whether the liability phase or the merits phase of the litigation was pending when § 114(2) became effective. The purpose of the rule of strict construction, coupled with the no-interest rule and informed by *Landgraf,* is to "protect the United States Treasury from potentially excessive liabilities which Congress did not anticipate." *Brown,* 78 F.3d at 650 (internal quotations omitted).

The Trout class disputes that the Navy's discriminatory conduct ended in 1979, maintaining that "the Navy continued to discriminate against women through at least December 31, 1991." This position is based both on the district court's extension of the backpay award to prevailing class members through December 31, 1991, and what the Trout class views as the Navy's implicit agreement, by stipulating to those payments, that it was liable for conduct through that date. But the district court's extension of the backpay award was reme-dial in nature, intended only to compensate the Trout class for the Navy's delaying litigation tactics; the district court did not find that discrimination by the Navy against the Trout class extended past 1979. Nor did the Navy implicitly agree that it was liable for discriminatory conduct through 1991; rather, the Navy stipulated only to the liability determined by the district court in 1986 on remand.

Finally, in *Brown* the court found no evidence of congressional intent to apply § 114(2) retroactively. 78 F.3d at 648. The Trout class' attempt to revisit this question comes too late, for it does not suggest that the court in *Brown* overlooked material legislative history. *See generally Barry,* 87 F.3d 1389. Not only does its claim of congressional intent to apply the 1991 amendments retroactively because the 1972 amendments to the Civil Rights Act applied retroactively ignore *Brown* and previous holdings of this court, it finds no explication in the language of the Civil Rights Act of 1991. The 1972 amendments, unlike the 1991 amendments, included "express congressional intent that [they were to] 'be applied to the fullest extent possible.'" *Tomasello v. Rubin,* 167 F.3d 612, 620 (D.C.Cir.1999) (quoting *McKenzie v. Sawyer,* 684 F.2d 62, 78 (D.C.Cir.1982)); *see also Thompson v. Sawyer,* 678 F.2d 257, 289 (D.C.Cir.1982). Without language to indicate such an intent, the court has declined to give the 1991 amendments the same retroactive application as the 1972 amendments. *Tomasello,* 167 F.3d at 620.

Accordingly, in light of the court's analysis of § 114(2) in *Brown* and the Supreme Court's instruction that a "statement that a statute will become effective on a certain date does not suggest that it has any application to conduct that occurred at an earlier date," *Landgraf,* 511 U.S. at 257, 114 S.Ct. at 1493, we hold that the district

court erred in awarding prejudgment interest under § 114(2) on backpay and attorneys' fees for periods prior to November 21, 1991. Because the Navy has paid interim attorneys' fees to counsel for the Trout class that is attributable to litigation of the prejudgment interest dispute, and because the final amount of costs and fees remains to be determined, we remand the case to the district court for final determination of the costs and fees owed to the Trout class.