# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 18, 2008          Decided September 2, 2008

No. 07-5053

YVONNE G. TROUT AND
CLARA A. PERLIGIERO,
APPELLANTS

v.

SECRETARY OF THE NAVY AND
COMMANDING OFFICER NAVAL COMMAND SYSTEMS SUPPORT
ACTIVITY,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 73cv00055)

———

*Bradley G. McDonald* argued the cause for appellants. With him on the brief was *John F. Karl, Jr.*.

*Daniel F. VanHorn*, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: SENTELLE, *Chief Judge*, and GINSBURG and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

SENTELLE, *Chief Judge*: In the latest saga of this apparently never-ending battle between the parties over liability and damages for violating Title VII of the Civil Rights Act, the district court denied a motion of Appellants Trout, *et al*., ("the Trout class") seeking pre-November 21, 1991, interest on backpay and attorneys' fees awarded to them for being subject to sex discrimination in employment during the 1970's. The Civil Rights Act of 1991, which included a provision for the award of prejudgment interest, was enacted on November 21 of that year. Although this court previously held that the interest provision did not apply to conduct that preceded enactment of the Civil Rights Act, *Trout v. Secretary of the Navy*, 317 F.3d 286 (D.C. Cir. 2003) ("*Trout IV*"), the Trout class claims that a subsequent Supreme Court case, *Republic of Austria v. Altmann*, 541 U.S. 677 (2004), is an "intervening change in law" that entitles them to interest on backpay and attorneys' fees that accrued before the change in law. The district court also granted Appellee Navy's motion for a refund of interim attorneys' fees and costs paid to the Trout class for litigating the interest issue. Because *Altmann* is inapposite and because the interest issue is distinct from the issue of sex discrimination, we affirm the district court's rulings on the motions.

## Background

In 1973 Yvonne Trout and other female employees of the Department of the Navy filed an employment discrimination lawsuit against the Navy, alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("the 1964 Act"), 42 U.S.C. § 2000e *et seq*. After twenty years of litigation the parties entered into a stipulation settling the case on its merits, which was approved by the district court on November 22, 1993 (hereinafter "Consent Decree"). Pursuant to the

Consent Decree and other stipulations and orders, the Navy paid the Trout class backpay for the period 1970 to 1992, as well as attorneys' fees up until 1993 for litigating the sex discrimination matter. The doctrine of sovereign immunity shields the government from liability for such payments, except when waived by statute. *See Gomez-Perez v. Potter*, 128 S.Ct. 1931, 1942 (2008). Subsections 2000e-5(g) and 2000e-5(k) of the 1964 Act waive the government's immunity from liability for backpay and attorneys' fees, respectively, for violations of that act. Because the 1964 Act did not allow for the payment of interest on damages, and because any waiver of sovereign immunity must be strictly construed in favor of the government, *see, e.g., Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986), and further because of the no-interest rule, i.e., "the historical rule that interest is a separate element of damages and may be recovered only against a party that has agreed to be liable therefor," *Brown v. Sec'y of the Army*, 78 F.3d 645, 651 (D.C. Cir. 1996), under the 1964 Act the Trout class was not entitled to receive interest on the backpay and attorneys' fee awards. On November 21, 1991, however, Congress amended Title VII. Civil Rights Act of 1991 ("the 1991 Act"), Pub. L. No. 102-166, 105 Stat. 1071. Under section 114(2) of that act the government is liable for "the same interest to compensate for delay in payment [as is available] in cases involving nonpublic parties." 42 U.S.C. § 2000e-16(d). The Navy consequently agreed to pay interest on its liability for backpay and attorneys' fees incurred after November 21, 1991. The Navy argued, however, that section 114(2), 42 U.S.C. § 2000e-16(d), was not retroactive and therefore it was not liable for interest on backpay and attorneys' fee awards for periods prior to November 21, 1991. The Trout class argued otherwise and litigated the issue, culminating in this court's resolution of the matter in *Trout IV*. In the meantime, pursuant to stipulations and orders in 1999 and 2001, the Navy paid the Trout class $106,375.45 in attorneys' fees and expert fees for litigating the pre-November 21, 1991,

interest issue.

In *Trout IV* we addressed the question of whether section 114(2), 42 U.S.C. § 2000e-16(d), has retroactive effect. In determining that it did not, we relied on our decision in *Brown*, 78 F.3d 645, which also concerned the question of whether section 114(2), 42 U.S.C. § 2000e-16(d), applies retroactively. *See Trout IV*, 317 F.3d at 290-92. *Brown* in turn relied on the Supreme Court's decision in *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994), in which the Court declined to give retroactive effect to provisions of the 1991 Act that would attach new monetary liability to conduct occurring before the statute's enactment. *See Brown*, 78 F.3d at 648-49. Guided by *Brown* and *Landgraf*, we held that section 114(2), 42 U.S.C. § 2000e-16(d), does not apply to conduct that occurred before November 21, 1991, and therefore the Navy was not liable for interest on backpay and attorneys' fees awarded for conduct before that time. *Trout IV*, 317 F.3d at 292-93. We remanded the case to the district court for a "final determination of costs and fees owed to the Trout class." *Id.* at 293.

On remand, the Navy filed a motion seeking a refund from the Trout class for $106,375.45, plus interest, that was paid by the Navy to the Trout class for attorneys' fees for litigating the prejudgment interest issue. The Trout class also filed a motion seeking, despite this Court's decision in *Trout IV*, an entry of judgment for pre-November 21, 1991, interest on backpay and attorneys' fees. The Trout class claimed in the motion that the Supreme Court's decision in *Altmann* is an intervening and controlling decision that entitles them to pre-November 21, 1991, interest. The district court granted the Navy's motion and ordered the Trout class to refund the Navy the $106,375.45 plus interest awarded to the Trout class for litigating the interest issue; the court denied the Trout class's motion to award it pre-November 21, 1991, interest in light of *Altmann*. *Trout v.*

*Winter*, 464 F. Supp. 2d 25, 34 (D.D.C. 2006).

## Discussion

The Trout class now appeals the district court's rulings on the motions, arguing, *inter alia*, that under *Altmann* it is entitled to pre-November 21, 1991, interest on backpay and attorneys' fees, and that as the "prevailing party" in the sex discrimination litigation it is entitled to attorneys' fees incurred in litigating the interest issue.

### *Altmann*

Despite this Court's holding in *Trout IV* that section 114(2) of the 1991 Act does not apply to conduct that preceded its enactment, the Trout class argues that *Altmann* "constitutes an intervening change in law that requires reversal" of *Trout IV*. *Altmann* concerned a suit filed sometime after 1998 against the state of Austria for conduct that occurred for the most part in 1948. 541 U.S. at 681-84. The Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. § 1602 *et seq*., grants foreign states immunity from suits in the United States subject to certain exemptions. The question for the Court was whether the FSIA, and therefore the exemptions thereunder, applied to claims based on conduct that occurred before the FSIA's enactment. *Altmann*, 541 U.S. at 686-87. As discussed in more detail below, the Court held that the FSIA does apply to pre-enactment conduct. *Id*. at 697. Attempting to analogize its case to *Altmann*, the Trout class argues that *Altmann* now controls statutes that concern waivers of sovereign immunity, and consequently under *Altmann*, section 114(2) of the 1991 Act, 42 U.S.C. § 2000e-16(d), applies to conduct that preceded its enactment. The Trout class therefore claims that it is entitled to interest on backpay and attorneys' fees incurred prior to November 21, 1991. We disagree.

In *Altmann* the plaintiff sued Austria for expropriating, before and after World War II, paintings owned by her family. Austria asserted the defense of sovereign immunity. As noted above, the question addressed by the Court was whether the FSIA applied to conduct that occurred prior to the FSIA's enactment in 1976. *Altmann*, 541 U.S. at 686-87. In answering this question the Court first looked to the default rule of no retroactive effect of congressional enactments announced in *Landgraf*, 511 U.S. at 263, 280. *Altmann*, 541 U.S. at 692-94. The Court noted that under *Landgraf* there is a presumption against retroactivity if Congress has not expressly stated that the statute is to have retroactive effect and the statute affects rights, liabilities, or duties with respect to past conduct. *Id*. at 693-94 (citing *Landgraf*, 511 U.S. at 676). On the other hand, the Court noted that the application of a statute to future as well as pending cases would be sanctioned if the statute merely confers or ousts jurisdiction. *Id*. at 693. The Court noted that although these principles seemed comprehensive, they did not provide a clear answer in the case before it because the FSIA could not be categorized as exclusively affecting either substantive rights or procedural matters. *Id*. at 694. The Court then noted that the purpose of the antiretroactivity presumption is "to avoid unnecessary *post hoc* changes to legal rules on which parties relied in shaping their primary conduct," and that this had never been the purpose of foreign sovereign immunity. *Id*. at 696. Rather, stated the Court, foreign sovereign immunity aims to protect foreign states "'from the inconvenience of suit as a gesture of comity.'" *Id*. (quoting *Dole Food Co. v. Patrickson*, 538 U.S. 468, 479 (2003)). The Court consequently looked to the FSIA and the circumstances surrounding its enactment for any suggestion that it should not apply to the 1948 conduct at issue. *Id*. at 697. In holding that the FSIA applies "to all pending cases regardless of when the underlying conduct occurred," the Court relied on "[t]he FSIA's overall structure" as well as "two of the Act's principal purposes: clarifying the

rules that judges should apply in resolving sovereign immunity claims and eliminating political participation in the resolution of such claims." *Id*. at 698-99. Additionally, the Court looked to Congress's understanding of the FSIA as noted in its preamble, which provides that "[c]laims of foreign states to immunity should henceforth be decided by courts of the United States and of the States . . . with the principles set forth in" the Act. *Id*. at 697 (quoting 28 U.S.C. § 1602) (emphasis omitted). The Court noted that pursuant to this language "[i]mmunity 'claims'–not actions protected by immunity, but assertions of immunity to suits arising from those actions–are the relevant conduct regulated by the Act." *Id*.

The Trout class argues that in applying the FSIA retroactively *Altmann* held that the default rule against retroactivity announced in *Landgraf* "does not apply to statutory waivers of sovereign immunity." In support of this argument the Trout class contends that the Supreme Court in *Altmann* adopted Justice Scalia's concurring opinion in *Landgraf*, *see id*. at 697-98; the class argues that consequently whether a statutory waiver of sovereign immunity may be applied retroactively should not be determined by the dates of the discriminatory conduct proven during the liability phase, but by the date of the assertion of a waiver of sovereign immunity. In other words, according to the Trout class, the relevant conduct for the purpose of retroactivity analysis in *Altmann* was not the expropriation, which predated the FSIA, but rather Austria's invocation of sovereign immunity at the time of the suit. Quoting from *Altmann* that "assertions of immunity to suits . . . are the relevant conduct regulated by the [FSIA]," 541 U.S. at 697, the Trout class contends that the "same interest" provision of section 114(2), 42 U.S.C. § 2000e-16(d), "logically can apply only to cases in which judgment on the merits is entered after enactment, because where there is no judgment, there can be no judgment interest, and hence no assertion of a

defense of sovereign immunity against the payment of prejudgment interest."

The Trout class concludes that consequently section 114(2), 42 U.S.C. § 2000e-16(d), "applies to all judgments entered after the effective date of the Act," and therefore it is entitled to interest on backpay and attorneys' fees incurred prior to November 21, 1991.

In *Trout IV* we held that section 114(2), 42 U.S.C. § 2000e-16(d), does not apply to conduct that preceded its enactment on November 21, 1991. 317 F.3d at 292. In doing so we relied on *Brown* which in turn relied on *Landgraf* and its default rule against retroactivity. We find nothing in *Altmann* that alters the rule under *Landgraf*. *Altmann* expresses no disagreement with the decision in *Landgraf*. Instead, the Court in *Altmann* stated that the retroactivity inquiry set forth in *Landgraf* "does not provide a clear answer in this case" because "the FSIA defies such categorization." 541 U.S. at 694. Resolution of the question before the Court turned on an analysis of the FSIA itself. In holding that the FSIA applies "to all pending cases regardless of when the underlying conduct occurred," the Court relied specifically on the history of foreign sovereign immunity, Congress's understanding of the FSIA as noted in its preamble, "[t]he FSIA's overall structure" as well as "two of the Act's principal purposes." *Id.* at 696-99. It is clear, then, that the Court's decision in *Altmann* was specific to the statute in that case. The Court itself reinforced this conclusion by stating that its analysis encompassed a "*sui generis* context." 541 U.S. at 696. And in *Fernandez-Vargas v. Gonzalez*, 548 U.S. 30 (2006), the Supreme Court noted that its "conclusion in [*Altmann*], that *Landgraf* was to be avoided, turned on the peculiarities of the Foreign Sovereign Immunities Act." *Id*. at 38 n.6. Just as in *Fernandez-Vargas*, "[t]hose peculiarities are absent here, and we thus advert to *Landgraf*, as we ordinarily

9

do." *Id*. In sum, *Altmann* has no effect upon the holding in *Landgraf* and consequently this Court's decision in *Trout IV* stands.

Distinction of claims

Section 113 of the Civil Rights Act of 1991, 42 U.S.C. § 2000e-5(k), states: "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs . . . ." There is no dispute that the Trout class was the prevailing party on the primary issue of sex discrimination and that it is entitled to an award of attorneys' fees from the Navy for litigating that issue. The Trout class contends, however, that even if it is determined that it is not eligible for pre-November 21, 1991, interest on backpay and attorneys' fees, the district court nevertheless erred when it ruled that the class was not entitled to recovery of the attorneys' fees incurred for litigating that issue. In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court addressed the question of whether a plaintiff who has succeeded on a significant claim, and therefore is entitled to attorneys' fees for work done on that claim, is also entitled to attorneys' fees for work performed on an unsuccessful claim. The Court, "recogniz[ing] that there is no certain method of determining when claims are 'related' or 'unrelated,'" 461 U.S. at 436 n.12, held that attorneys' fees should not be awarded for an unsuccessful claim when that claim "is *distinct* in all respects from [the plaintiff's] successful claims." *Id*. at 440 (emphasis added). The Navy argues that the interest issue is distinct from the sex discrimination issue and therefore no attorneys' fees should be awarded for litigating that issue.

The Trout class asserts that the issues are in fact not distinct, claiming that, for purposes of collecting attorneys' fees,

it remains the "prevailing party" in the sex discrimination litigation, and that its request for pre-November 21, 1991, interest was part of that litigation because such interest was intended to compensate the class for damages due to "the Navy's bad faith delays." For authority the Trout class relies on *Cody v. Hillard*, 304 F.3d 767, 773 (8th Cir. 2002), in which the Eighth Circuit, in determining whether to award attorneys' fees to the plaintiffs for civil rights litigation, considered, *inter alia*, the plaintiffs' "considerable success in the litigation as a whole," and whether issues litigated later were "inextricably intertwined" with the issues upon which the plaintiffs prevailed. *Id*. at 773-74. Here, argues the Trout class, the 1993 Consent Decree gave them "maximum success," and furthermore the interest issue is "'inextricably intertwined' with the awards of backpay and attorneys' fees because the class would have no claim for interest if it were not the "prevailing party" in the underlying sex discrimination litigation. Under this approach, a claim for prejudgment interest would always be deemed related to the merits claim. The Trout class further argues that the Consent Decree contains express language reserving the pre-November 21, 1991, interest issue, and that under a fair reading of the Consent Decree it was required to litigate that interest issue. Quoting from the Tenth Circuit's decision in *Johnson v. City of Tulsa*, 489 F.3d 1089 (10th Cir. 2007), that attorneys' fees were to be awarded for "compensation for reasonable efforts to preserve the fruits of the decree," *id*. at 1111, the Trout class argues that the Consent Decree expressly contemplated that a post-judgment determination would be made as to whether the class would receive pre-November 21,1991, interest, and that in seeking that interest the class was trying to "preserve the fruits" of the Consent Decree. Therefore the Trout class claims that the interest issue was "part and parcel of the central issue in the case," i.e., the sex discrimination allegations.

The Navy contends that the Trout class's argument that it should be awarded attorneys' fees for litigating a post-decree issue even though it lost that issue on appeal has no merit. According to the Navy, fees for litigating post-decree issues have only been awarded in two situations. The first situation is when the consent decree expressly authorizes the court to award such fees. Here, the Navy argues, the Consent Decree did not obligate it to pay such fees regardless of the final outcome of the issue, but merely reserved the Trout class's right to seek such fees. And the Navy further argues that any such fees already paid were subject to explicit reservations of the right of the Navy to seek recovery of those fees if it prevailed on the interest issue. The second situation in which fees have been awarded for litigating post-decree issues, according to the Navy, is when that litigation was necessary to protect the relief granted for the primary claims. But the litigation issue here, argues the Navy, was not necessary to secure any particular relief granted by the Consent Decree. Instead, the Navy contends, the litigation on the interest issue was undertaken in an attempt to gain an additional remedy for the Trout class. Consequently, contends the Navy, the district court acted well within its discretion when it determined that the interest issue was distinct from the sex discrimination issue.

Relying on the factors set forth in *Hensley*, the district court determined that the Trout class's unsuccessful interest claim was distinct from its successful sex discrimination claim, *Trout*, 464 F. Supp. 2d at 32, and we agree. The Trout class and the Navy disagree as to our standard of review on the issue of the distinctness of the sex discrimination claim and the interest claim. The Trout class contends that this is a purely legal question which we should review *de novo*, while the Navy believes that we should review the district judge's decision for abuse of discretion, giving great deference to the district judge's superior knowledge of the case as a whole. On the present

record we need not establish a precedent on that subject as the same result prevails in any event. Even applying the *de novo* standard, we agree with the Navy that the claims are distinct. Litigation of the interest issue was not inextricably intertwined with the sex discrimination litigation – it was not necessary to obtain or protect any relief awarded, nor was it necessary to preserve the integrity of the Consent Decree as a whole. The district court therefore correctly determined that the issues were distinct and denied an award of attorneys' fees for litigation of the interest issue.

## Remaining issues

In its opinion the district court ruled "that in order to restore the parties to the status quo," 464 F. Supp. 2d at 34, the Navy was entitled to interest on the refunded $106,375.45. The Trout class argues that the district court erred by not considering the "tax impact" of its refund order on the class's counsel. As the Navy points out, however, this argument was not raised during the proceedings before the district court, and we therefore deem it waived. We find no merit in the Trout class's other claims made in this appeal.

## Conclusion

For the reasons stated above, we affirm the judgment of the district court.